## Sawyer vs. Warner.

An allegation, in an answer, that the defendant never gave to the plaintiff the note declared on, is a denial of the allegation in the complaint that the defendant made the note, so far as making includes delivery; and also of the further allegation, that the defendant delivered the note to the plaintiff.

It amounts to a denial of indebtedness upon the note. And the defendant is at liberty, in support of his side of the issue, independent of other modes, to prove facts inducing a presumption that no delivery was made, and in that way overcome the presumption arising from the plaintiff's proof of possession of the note, and the signature of the defendant.

He is therefore entitled to give in evidence any facts calculated to satisfy the jury, by fair and direct inference, that the note never was delivered by him. Thus, he may introduce evidence disclosing conduct of the plaintiff wholly inconsistent with the fact of indebtedness by the defendant, on the note.

The complaint in this cause alleged the making of a promissory note for $500, by the defendant, on the 5th day of October, 1848; that he delivered it to the plaintiff, on the same day; that the plaintiff was the legal owner of the note; that no part thereof had been paid; and that the defendant was justly indebted to the plaintiff therefor, in the sum of $500, and interest. The answer of the defendant alledged that the defendant never gave to the plaintiff the said note, or any other of similar tenor and effect; and that he was not indebted to the plaintiff upon the said note, or upon any other note of similar tenor and effect; nor was he indebted to the plaintiff upon any other consideration whatever. The cause was tried at the Monroe circuit, before Justice Welles and a jury. The plaintiff called a witness, who testified that he knew Daniel Warner the defendant, and had seen him write; that the signature to the note shown the witness was his. The note was then read in evidence, and was as follows: "Good to James W. Sawyer for $500, value received, in cash borrowed. October 5, 1848. Daniel Warner. $500." The counsel for the defendant then offered to prove in his behalf, that in September, 1848, the plaintiff was engaged in a grocery business, having a considerable stock of goods on hand in his store, in the city of Rochester. That late in that month the defendant Warner purchased the entire stock of goods of the plain-

tiff, then on hand, of which an inventory was taken, amounting to about twelve thousand dollars. That the defendant paid him, the plaintiff, $3,200 in cash, and it was agreed that the balance was to be paid at some future time they agreed upon. Warner rented the store of the plaintiff for one year, at $1200 for the year, and it was agreed that Sawyer might keep a desk in the counting-room, and use it as his office for the settlement of accounts with his customers, the whole or such part of the year as he chose, and should allow Warner at the rate of $200 a year, so long as he kept a desk in the office. Warner received possession of the store and the goods, in pursuance of the agreement, on the first of October, 1848. Sawyer's head clerk and book-keeper continued on in the store as head clerk and book-keeper for Warner. Warner procured a new set of books, and the book-keeper, in the presence of both the parties, credited on the books to Sawyer, the amount due on the inventory, and charged him the $3,200 cash, paid. Warner, soon after the purchase, went to New-York and purchased goods for the store to the amount of about $10,000, of which he paid about $5,000, leaving about $5,000 which he had purchased on credit. The goods purchased were received at the store, and Warner continued the business until the 8th of January, 1849. Sawyer in the mean time kept his desk in the counting-room, and did business there, and was familiar with the books and the business. On the 8th day of January, 1849, Sawyer having become uneasy, proposed to re-purchase the stock of goods, and asked Warner on what terms he would re-sell. Warner proposed to re-sell to Sawyer on his paying back all the money which Warner had paid him, without interest, and assuming the debts and paying back all the expenses of carrying on the store, cancelling the rent, and paying Warner $1,000 for his time and trouble, and profits, and the interest on what he had advanced; Sawyer to receive all that Warner had received from the proceeds of the store, and all securities and accounts growing out of the business, and to give Warner a bond to indemnify him against the debts. Warner had received, as it was understood, from the proceeds of the business, an amount about equal to the sum

paid by him in New-York, and the proposition required the payment of about $4,200 by Sawyer to Warner. Sawyer asked Warner to remain in the store after making this proposition until he, Sawyer, could go out and see if he could raise the money. Warner assented, and Sawyer went out and soon came back and said he could pay $3,000 in a check on the Monroe Bank, and would give his note for $800, payable in ninety days, or about that time, at the Monroe Bank, would turn out a buggy wagon at $125, pay what cash he had in his pocket then, which would leave about $45 due to Warner, which he would pay in groceries ; and that if he would accept payment in that way he would take the goods, &c., on the terms proposed. To this Warner assented. Sawyer gave Warner his check for $3000 and note for $800, and some money from his wallet, and a receipt in full for rent, which is as follows : " I hereby certify that I have no claim against Daniel Warner for the rent of store 44 and 46 State-street, to this date, January 8th, 1849. James W. Sawyer;" also a bond to pay the debts in New-York. Warner transferred to him the goods, accounts and securities, and the possession of the store, and on that day or the next day Warner sent to Sawyer's house and got the wagon, and to the store and got the goods, amounting to about $45. The $3,000 check was paid. The $800 note Warner got discounted at the bank, and Sawyer paid it when due, and he paid all the debts which he agreed to pay by his bond, and the notes and receipts for such payments were surrendered to Warner, and the bond given up to Sawyer. Some time after the purchase, when he was inquired of why he purchased back, he said he had sold out to Warner, and had not the scratch of a pen against him, and felt uneasy and concluded he would purchase back. Warner was all the time also a man of responsibility, and nothing was said to him by Sawyer about the payment of the note in suit, after the transactions above referred to ; and it was never presented to Warner for payment, or payment requested of it by letter or otherwise ; and the first demand which was made of payment was the commencement of this suit, which was on the 4th of January, 1850. To the admission of which evidence the plaintiff, by his counsel, objected,

upon the grounds, 1st. That the facts stated, if proved, would have no tendency to support the defense interposed by the pleadings. 2d. That it was inadmissible under the pleadings. But his honor the circuit judge overruled the objection, and permitted the defendant to give evidence tending to prove the facts as offered. To which decision the plaintiff excepted. The jury found a verdict for the defendant, and the plaintiff appealed.

*G. F. Danforth,* for the plaintiff.

*H. R. Selden,* for the defendant.

*By the Court,* T. R. STRONG, J. The allegation in the answer, that the defendant never gave the note to the plaintiff, is a denial of the allegation in the complaint, that the defendant made the note, so far as making includes delivery ; (*Russell* v. *Whipple,* 2 *Cowen,* 536, *and cases cited ;*) and also of the further allegation, that the defendant delivered the note to the plaintiff. The question to be tried on these allegations was, whether or not the note was delivered to the plaintiff, as alleged by him. All that was necessary on the part of the plaintiff, in the first instance, to maintain his part of the issue, was the production of the note and proof of the defendant's signature ; and he did produce it and make that proof at the trial. This was prima facie evidence of the delivery of the note to the plaintiff. Those facts warranted the presumption of the fact of delivery, and in the absence of evidence to the contrary, the jury would have been required to find that a delivery was made. But the defendant was at liberty in support of his side of the issue, independent of other modes, to prove facts inducing a contrary presumption, and in that way overcome the presumption from the plaintiff's proof. And he was entitled to give in evidence any facts, calculated to satisfy the jury by fair and direct inference, that the note never was delivered by him. The evidence offered by him and received, disclosed conduct of the plaintiff wholly inconsistent with the fact of indebtedness by the defendant on the note, from which a strong presumption arose against the

existence of that fact. If the defendant had set up in his answer the defense of payment, it cannot be doubted that this evidence would have abundantly sustained it. Such a defense would have admitted the execution of the note—which includes delivery—and left nothing but payment to which the presumption could have been applied. Payment however was not pretended; the defense was that the note never had a legal existence. But I do not perceive why the presumption was not equally as available in support of that defense, as it would have been in support of the defense of payment. It must be borne in mind that the presumption which the evidence raised was a presumption against the indebtedness; not that the indebtedness had been discharged, any more than that it never existed; it was in its nature applicable to any defense which denied the indebtedness; and the issue joined and circumstances of the case determined its application. A denial of the delivery of the note, was a denial of the indebtedness upon it; it put in issue a fact indispensable to the indebtedness; and I am satisfied the evidence was properly received on that issue. (*Christopher* v. *Sparks,* 2 *Jac. & Walk.* 223. *De Freest* v. *Bloomingdale,* 5 *Denio,* 304.)

Judgment affirmed.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]